Colin Gerstner
Paul Adam
GERSTNER ADAM LAW PLLC
2828 1st Ave. S.
Billings, MT 59101
(406) 969-3100
colin@gerstneradamlaw.com
paul@gerstneradamlaw.com

John Heenan
HEENAN & COOK PLLC
1631 Zimmerman Trail, Ste 1
Billings, MT 59102
(406) 839-9091
john@lawmontana.com

*Attorneys for the Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| KRISTIN MAYER, as conservator for Dexxon Butler,<br><br>    Plaintiff,<br><br>-vs-<br><br>MADISON ADOPTION ASSOCIATES LTD.,<br><br>    Defendant. | Cause No. CV-21-38-GF-BMM-JTJ<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

   Kristin Mayer, acting as conservator for Dexxon Butler, and by and through her attorneys of record, alleges and complains as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

2. Plaintiff Kristin Mayer is a citizen of Montana. Dexxon Butler is also a citizen of Montana.

3. Defendant Madison Adoption Associates Ltd. ("Madison Adoption") is a corporation that is incorporated in Delaware. Upon information and belief, Madison Adoption's corporate headquarters and principal place of business is also in Delaware.

4. Venue is proper in this District because a substantial part of the events or omissions giving rise to this claim occurred in Montana. 28 U.S.C. § 1391(b)(2). In addition, venue is proper in the Great Falls Division pursuant to Montana law. LR 3.2(b); Mont. Code Ann. § 25-2-122(2). Dexxon Butler is a resident of Cascade County. Madison Adoption is a corporation incorporated in a state other than Montana.

5. This Court has personal jurisdiction over Madison Adoption since it is subject to the jurisdiction of Montana courts. Fed. R. Civ. P. 4(k). As outlined below, Madison Adoption committed acts resulting in accrual within Montana of a tort action. Mont. R. Civ. P. 4(b)(1)(B). Specific

jurisdiction exits, as Madison Adoption purposefully directed activities in Montana, consummated some transactions in Montana, or purposefully availed itself of the privilege of conducting activities in Montana.

## FACTUAL ALLEGATIONS

**I.**   *Dexxon Butler and his placement at the Ranch for Kids*

6. Dexxon Butler was born in China around June 16, 2002. The Chinese government assumed care of Dexxon after he was found abandoned as an infant.

7. Dr. Patrick and Tari Butler applied for and were granted permission to adopt Dexxon in 2015. The Butlers are a married couple living in Illinois. In March 2015, the Butlers brought Dexxon from China to the United States. Upon arrival home, the Butlers assumed care of Dexxon as their son. Once the adoption process was completed, Dexxon legally became the Butlers' son, and he became an American citizen.

8. Not long after bringing Dexxon into their home, the Butlers decided that they no longer wanted custody of him. Upon information and belief, the Butlers sent Dexxon to Idaho in July 2015 with the goal of "rehoming" him with another family.

9. For reasons unknown to the Plaintiff, the "rehoming" process was not completed in Idaho.

10. In December 2015, Dexxon was sent to the Ranch for Kids. The Ranch for Kids was a facility located in Lincoln County, Montana, that billed itself as a "Christian home for 'at risk' adoptees who may be experiencing difficulties in their new families in the U.S.A." It claimed to offer effective treatment for children with Fetal Alcohol Spectrum Disorder and Reactive Attachment Disorder, which are common conditions among adopted children. Parents would board adopted children at the Ranch for Kids, sometimes for years at a time.

11. In reality, the Ranch for Kids was a *de facto* prison camp that abused and neglected the children that it promised to care for. Abuses including physical abuse, such as making children go on 20-mile forced marches on Forest Service roads in inclement conditions. Staff would also physically assault children as disciplinary measures, including pushing children to the ground, physically putting children in various holds, choking children, and pulling hair.

12. Diet restrictions were also a form of punishment. As an example, one child described how she had been disciplined by being fed only beans and rice, sometimes unheated, for almost a whole summer.

13. The Ranch for Kids also psychologically abused the children entrusted in their care. The psychological abuse included secluding children and isolating

them as a punitive measure. Ranch for Kids staff would also verbally abuse children. One Ranch for Kids staff member was described as having frequently screamed at the children. The Ranch for Kids would also withhold prescribed medication as either a disciplinary measure or because they did not believe the medications were necessary.

14. The Ranch for Kids utterly failed to educate the children in their care or otherwise prepare them for adulthood. One child described the education experience at the Ranch for Kids consisting of students taking turns reading out of the same textbook for 45 minutes to an hour each day. The manager of the Ranch for Kids would speak mostly of financial success and spoke against government agencies such as Child Protective Services. Children were far behind their peers academically when they left the Ranch for Kids.

15. One participant later testified that the only thing he learned from the Ranch for Kids "was how to suppress his anger, and turn it into anger and hatred towards himself."

16. The Ranch for Kids' abuse and neglect of the children was obvious for whomever visited the facility. There were several reports by community members who witnessed children being led on forced marches while woefully underdressed for the inclement weather. One set of parents who

visited their child was shocked by her appearance and described her of looking like a dog beating into submission.

17. Dexxon experienced many of the same horrors during his time at the Ranch for Kids. This included several of the infamous forced marches.

18. In addition, Dexxon endured significant physical abuse at the Ranch for Kids. Staff members strangled Dexxon at least twice, including one time to the point of unconsciousness. On another occasion, Dexxon had some scarring on his neck due to an accident involving horses, and the Ranch for Kids did not seek proper medical attention for the injuries.

19. Dexxon also sustained psychological abuse and a severe lack of education and training at the Ranch for Kids.

20. In short, Dexxon suffered significantly because of his time at the Ranch for Kids. He suffered physically from the abuse. Dexxon also suffered mentally and emotionally from his time there. Dexxon is far behind academically, emotionally, and socially when compared to other young adults his age.

21. The Montana Department of Public Health and Human Services ("DPHHS") began investigating the Ranch for Kids after receiving several reports of abuse at the facility. This investigation culminated with the Department's removal of 27 children from the Ranch for Kids on July 23,

2019. The DPHHS permanently revoked the Ranch for Kids' license to operate on October 9, 2020.

22. Dexxon was among the children removed from the Ranch for Kids. The State of Montana assumed legal custody of Dexxon, as the Butler did not want him returned to their home. Dexxon currently lives in a group home in Great Falls, Montana. Dexxon is unable to care for himself.

## II. *The Role of Madison Adoption*

23. Upon information and belief, the Butlers contracted with Madison Adoption to serve as their adoption agency before beginning the process of adopting Dexxon. Madison Adoption assumed the duty of ensuring that the adoption went through in full compliance with United States and Chinese law.

24. Madison Adoption's duty to the Butlers and Dexxon did not end upon the completion of the adoption. Instead, Madison Adoption had several post-adoption reporting requirements. Madison Adoption also owed a duty to Dexxon to make sure his placement served his best interests.

25. After a child is adopted from China, the China Center for Children's Welfare and Adoption requires adoptive parents to submit separate post placement reports six months, one year, two years, three years, four years, and five years after the adoption is completed. The adoptive agency is responsible for completing the first three Post Adoption Reports.

26. The Post Adoption Reports are important, as the reporting agency can assess how the entire family is adjusting, identify issues, provide suggestions and resources, and help facilitate a smooth transition. They also serve to assure the Chinese government that the children who are placed with permanent families in the United States are receiving appropriate care and protection.

27. Federal regulations implement the Chinese Post Adoptive Report requirements and impose a duty upon adoption agencies to make "good-faith efforts" to encourage participation with the Post Adoption Reports. 22 C.F.R. § 96.51(c). The adoption agency is required to monitor and supervise the adopted child's placement "to ensure that the placement remains in the best interests of the child" and that all Post Adoption Report requirements are met. 22 C.F.R. § 96.50(b).

28. If there is a "crisis" in the adoption's post-placement phase, the adoption agency is required to find a counselor that is best equipped to deal with the child's problems. 22 C.F.R. § 96.50(c). If counseling is unsuccessful, the adoption agency "assuming custody of the child assumes responsibility for making another placement of the child." 22 C.F.R. § 96.50(d).

29. Madison Adoption makes the Post Adoption Report requirements known to adoptive parents at the outset before they complete the adoption process.

30. Upon information and belief, Madison Adoption did not complete any Post Adoption Reports for Dexxon.

31. Madison Adoption failed in its post-adoption requirements for Dexxon. It did not investigate Dexxon's placement after the Butlers sent him away. Madison Adoption did not ensure that Dexxon was receiving appropriate care and protection.

32. Upon information and belief, Madison Adoption staff would discuss Dexxon's situation with the Butlers. In addition, Madison Adoption staff would have discussions with staff from the Ranch for Kids regarding Dexxon.

33. Madison Adoption relied upon the Ranch for Kids' representations for Dexxon's progress. Specifically, Madison Adoption believed the Ranch for Kids when staff told Madison Adoption that Dexxon's dismissal from the facility was imminent, and that he would likely be forced into a lockdown facility like a psychiatric hospital.

34. Madison Adoption did not do an adequate investigation into whether placement at the Ranch for Kids was in Dexxon's best interests. Madison Adoption did not ensure that it was a safe place of Dexxon, nor did it do any independent investigation. Upon information and belief, Madison Adoption

relied upon the representations made by Ranch for Kids staff concerning Dexxon without any subsequent verification.

## COUNT ONE – NEGLIGENCE

35. Madison Adoption owed a duty of care to Dexxon. This included, but is not limited to, a duty to adequately investigate Dexxon's post placement conditions and ensure that he is receiving appropriate care and protection. Madison Adoption further owed a duty to complete Post Adoption Reports to make sure that Dexxon was having as smooth as a transition as possible to life in the United States.

36. Madison Adoption breached its duties to Dexxon. The breaches include, but are not limited to, failing to adequately investigate and report on Dexxon's conditions. Madison Adoption did not adequately investigate whether the Ranch for Kids was an appropriate placement for Dexxon. In addition, Madison Adoption never reported on Dexxon's post-adoptive placement. Madison Adoption did not take adequate measures to protect Dexxon from being placed in an abusive requirement.

37. This breach in the standard of care has caused Dexxon to suffer damages. An adequate investigation into the Ranch for Kids would have prevented Dexxon's placement with the facility and spared him the physical and psychological abuse that he suffered.

## COUNT TWO – NEGLIGENCE PER SE

38. Madison Adoption violated 22 C.F.R. §§ 96.50 and 96.51 by failing to insure Dexxon's post-adoptive placement was in his best interests and by failing to complete the required Post Adoption Reports for the Chinese government.

39. The above-cited regulations were enacted to protect adopted foreign children like Dexxon. The injuries that Dexxon suffered are the kind of injuries that the regulations were designed to prevent. The Post Adoption Reporting requirements are designed to make sure the adopted child is adjusting to life in the United States and that the child is receiving adequate care. The regulations were also designed to govern adoption agencies like Madison Adoption.

40. Madison Adoption violations of the federal regulations constitute negligence per se. Because of the violations, Dexxon has suffered damages. WHEREFORE, Plaintiff seeks judgement against the Defendant as follows:

1. For a judgment for all damages permitted under Montana law in such amounts as shall be proven at trial;

2. For costs of this action;

3. For such other relief as the Court deems just.

DATED this 9th day of April, 2021.

                                              GERSTNER ADAM LAW PLLC
                                              HEENAN & COOK

                                              By: /s/ John Heenan
                                              John Heenan
                                              *Attorneys for the Plaintiff*