## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| KRISTIN MAYER, as conservator for Dexxon Butler, | **CV-21-38-GF-BMM** |
| Plaintiff, | |
| v. | **ORDER** |
| MADISON ADOPTION ASSOCIATES, LTD., | |
| Defendant. | |

## INTRODUCTION

Plaintiff Kristin Mayer, as conservator for Dexxon Butler, filed this negligence action against Defendant Madison Adoption Associates, Ltd. ("Madison"). Docs. 1, 13. Madison filed a motion to dismiss the first amended complaint for lack of jurisdiction and failure to state a claim. Doc. 16. The Court held a hearing on the motion to dismiss on September 14, 2021. Doc. 23.

## BACKGROUND

Dexxon Butler ("Dexxon") was born in China in 2002. Dexxon's parents abandoned him as an infant and the Chinese government assumed his care.

Dr. Patrick and Tari Butler ("Butlers") of Illinois adopted Dexxon in 2015. Butlers contracted with Madison to serve as their adoption agency. Madison is a Delaware, not-for-profit corporation that specializes in intercountry adoption. Madison's agreement with Butlers required Madison to assist Butlers with the adoption process, including participation in the preparation of China-mandated post-adoption reports. Madison has an office in Illinois that prepared the post-adoption reports for Dexxon.

Chinese law requires post-adoption reports to the Chinese government. The United States requires adoptive parents comply with all post-adoption reporting requirements of foreign nations. 22 C.F.R. § 96.51(c). When post-adoption reports are required, they must be provided for in the adoption services contract. *Id.* China requires reports at 6 months, 1 year, 2 years, 3 years, 4 years, and 5 years post-adoption. Doc. 6 at 4. The initial adoption agreement between Madison and the Butlers required Madison to complete the first three post-adoption reports to China. Madison would provide, in fact, all of the reports. Doc. 19 at 13-14.

Only three months after Dexxon arrived in Indiana, Butlers determined that caring for Dexxon was too substantial of a burden. Butlers sent Dexxon to a youth group home in Idaho. Dexxon spent five months at the Idaho group home before the group home notified Butlers that it would not be able to continue caring for Dexxon.

Madison "worked diligently" to assist Butlers in selecting a new residential facility for Dexxon. Doc. 17 at 3. "With the assistance of Madison," Butlers chose the Ranch for Kids in Lincoln County, Montana. Doc 19-1 at 3. Madison described the Ranch for Kids as "a compassionate treatment program for children" and "a bridge of hope and healing for hurting families." *Id.* Madison's 1-year report to the Chinese government, concluded that Madison helped "determine the best placement for Dexxon" and that Ranch for Kids "has a highly trained staff" which is "committed to providing a safe environment for Dexxon." *Id.* at 5.

Plaintiff alleges that Ranch for Kids was not the godsend for Dexxon that Madison portrayed in its reports to China. Ranch for Kids physically and emotionally tortured the children in its care. Dexxon was allegedly not spared the abuse. Ranch for Kids staff allegedly strangled Dexxon to unconsciousness, psychologically abused him, withheld food and medical treatment, and provided minimal education.

During Dexxon's four years at Ranch for Kids, Madison remained in electronic contact with the Ranch for Kids staff. Madison claimed to receive weekly reports regarding Dexxon's health from Ranch for Kids and reported social improvement and good health to the Chinese government. Madison's employees never personally observed Dexxon's health and never travelled to Montana. Madison completed "home visits" for Dexxon every year, as required by Chinese

reporting requirements, by meeting with Butlers in Illinois, despite noting that Butlers were not in more than "minimal" contact with Dexxon. *See* Doc. 19-4 at 3.

Dexxon was rescued from Ranch for Kids as part of a police raid in July of 2019. Butlers refused to allow Dexxon to return to their home and so Dexxon became a ward of Montana. Dexxon currently lives in a group home in Great Falls, Montana.

## ANALYSIS

### I.   Motion to Dismiss Under Rule 12(b)(6).

Madison argues that it owed no legal duty to Dexxon and that it was not required to conduct a firsthand investigation of Dexxon's health and wellbeing. Doc. 17 at 21-27. Absent a legal duty to Dexxon, Madison contends that Plaintiff's complaint for negligence against it fails to state a claim upon which relief may be granted. Plaintiff alleges that Madison owed Dexxon both a statutory and common law duty to adequately investigate and accurately report Dexxon's health and wellbeing. Doc. 19 at 16-25.

The existence of a legal duty presents a question of law to be determined by the court. *Fisher v. Swift Transp. Co.*, 181 P.3d 601, 607 (Mont. 2008). In a negligence action, a duty may arise from a statutorily imposed obligation. *Prindel v. Ravalli Cnty.*, 133 P.3d 165, 175 (Mont. 2006); *Jackson v. State*, 956 P.2d 35, 49 (Mont. 1998). The common law may also provide a remedy when a duty imposed by applicable statute is manifestly intended for the benefit and protection of

4

individuals. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 374 (1982) (citing *Texas & Pacific Ry. Co. v. Rigsby*, 241 U.S. 33 (1916)).

Federal law requires that adoption agencies comply with the post-adoption reporting requirements of a child's country of origin. 22 C.F.R. § 96.51(c). The China Center for Children's Welfare and Adoption ("CCCWA") is the central Chinese authority for the purposes of the Hague Adoption Convention. The CCCWA requires that foreign adoption organizations adopting children in China comply with the CCCWA's Regulations and Requirements for Foreign Adoption Organizations doing Adoption with China. Doc. 19-5. CCCWA regulations require that post-adoption reports be "*real, specific and comprehensive. The social worker should prepare the report based on the actual visits*, recording faithfully what he or she *sees and hears* in the family and reflecting objectively the changes of the adoptive family after the adoption and the life and growth of the adopted child." Doc 19-5 at 15 (emphasis added).

CCCWA regulations establish an obligation for adoption agencies to visit, observe, and report truthfully on the "life and growth" of the adopted child. *Id.* Adoption agencies that conduct business with China must provide post-adoption reports in accordance with CCCWA regulations. *See* 22 C.F.R. § 96.51(c). Those obligations create a statutory duty. To the extent that Madison failed to "actual[ly] visit" Dexxon, provide "real" reports, or record faithfully what Madison social

workers "see and hear," Madison breached that statutory duty. Plaintiff alleges that Madison failed to accurately report and investigate Dexxon's health and wellbeing. Among those allegations, Plaintiff claims that Madison never conducted a firsthand visit with Dexxon after Dexxon left Butlers' home in Illinois. Plaintiff alleges sufficient facts, taken as true, to establish a potential breach of the statutory duty Madison owed to Dexxon. *See* Doc. 13 at 7-8.

Montana law also supports a common law duty owed by adoption agencies, in the course of their obligations, to act reasonably to observe and protect the health of the adopted child. Montana's fundamental principal of tort law is clear:

> where a person undertakes to do an act or discharge a duty by which the conduct of another may be properly regulated and governed, he is bound to perform it in such a manner that those who are rightfully led to a course of conduct or action on the faith that the act or duty will be duly and properly performed shall not suffer loss or injury by reason of negligent failure so to perform it.

*Stewart v. Standard Publ'g Co.*, 55 P.2d 694, 696 (Mont. 1936).

An adoption agency plays a unique and fundamental role in the life of an adopted child. The adoption agency may, at times, be the primary caregiver or overseer of the child's health and safety. Adoption agencies connect all parties involved in the adoption process and may determine or play a role in determining where and how a child lives. Particularly in the case of international adoption, the child may be reliant on the adoption agency to observe the child's mental wellbeing. In that instance, the adoption agency may furnish the adopted child's only contact

6

capable of speaking with the child in their native language.

Where an adoption agency undertakes a role in an adopted child's life—whether required by statute, contract, as a necessity of the adoption process, or voluntarily—an obligation arises. Madison argues that no common law duty should exist here, but to relieve an adoption agency of the duty to act without negligence toward a child in its care would relieve adoption agencies of the same level of care expected from any person. *Fisher*, 181 P.3d at 606 ("At the most basic level, we all share the common law duty to exercise the level of care that a reasonable and prudent person would under the same circumstances."). When one willingly accepts a responsibility toward another Montana law expects that the actor will act as a reasonable and prudent person would in the commission of that responsibility. *See id.* at 609. Madison was allegedly acting as the overseer of Dexxon's health. To the extent it acted negligently in its oversight of Dexxon, Madison breached its duty of care. *See id.*

The Montana Supreme Court's prior findings also suggest that a duty between adoption agency and adopted child exists under Montana's common law. Montana law has "long recognized that the common law may impose additional, special duties based upon relationship." *Id.* at 606. Montana previously has recognized "a cause of action for negligent misrepresentation in the adoption context" in order to "promote public policy and ensure that 'adoptive parents assume the awesome responsibility

7

of raising a child with their eyes wide open.'" *Jackson*, 956 P.2d at 46 (quoting *Roe v. Cath. Charities of the Diocese of Springfield*, 588 N.E.2d 354, 365 (Ill. App. Ct. 1992)). In *Jackson*, adoptive parents alleged negligence after an adoption agency failed to disclose the likelihood of an adopted child's congenital mental impairment. *Jackson*, 956 P.2d at 39-41. The Montana Supreme Court held that adoption agencies assume a common law duty to refrain from making negligent misrepresentations when they begin volunteering information to prospective adoptive parents. *Id.* at 45-47. The Montana Supreme Court further determined that the State of Montana possessed a statutory duty under the Uniform Adoption Act of Montana to fully and accurately disclose all relevant information to the adoptive parents. *Id.* at 45-47 (citing Uniform Adoption Act of Montana, Mont. Code Ann. § 40–8–122 (repealed and replaced by Montana Adoption Act, Mont. Code Ann. § 42 *et seq.*)).

A common law duty from an adoption agency to an adopted child furthers public policy similar to the duty established to adopting parents in *Jackson*. In making the *Jackson* decision, the Montana Supreme Court first turned to the law of neighbor jurisdictions. *Id.* at 46. Multiple states have established that, where an adoption agency or state welfare department negligently places a child, the adoption agency or welfare department owed that child a duty of care. *See, e.g.*, *Elton v. Cnty. of Orange*, 84 Cal.Rptr. 27 (Cal. App. Ct. 1970); *Vonner v. La. Dep't of Pub.*

*Welfare*, 273 So.2d 252 (La. 1973); *Koepf v. Cnty. of York,* 251 N.W.2d 866 (Neb. 1977); *Bartels v. Cnty. of Westchester*, 76 A.D.2d 517 (N.Y. App. Div. 2nd Dep't. 1980); *Little v. Utah State Div. of Fam. Servs.*, 667 P.2d 49 (Utah 1983); *C.L. v. Dep't of Soc. & Health Servs.*, 402 P.3d 346 (Wash. Ct. App. 2017).

Madison cites *T.S.B. by Dant v. Clinard* as an example of a sister state finding against a duty between an adopted child and their adoption agency. 553 N.E.2d 1253 (Ind. Ct. App. 1990). Madison misconstrues the facts and reasoning in that case. The Court of Appeals of Indiana ruled in *T.S.B. by Dant* that no duty exists on the part of a child adoption agency to a child "*when the agency is not engaged in placing the child for adoption*." *Id.* at 1256 (emphasis added). The court concluded that the adoption agency, which provided a list of names of adoption seeking parents to the child's grandmother, but refused to assist with the actual adoption, had not participated in the adoption placement and thus owed no duty to the child when the selected adopted parent physically abused the child. *Id.* at 1255-56. The case turned on whether "the party being charged with negligence had knowledge of the situation or circumstances surrounding that relationship." *Id.* at 1256. The relationship between the adopted child and adoption agency did not control. *Id. T.S.B. by Dant* suggests that the adoption agency would have possessed a duty to the child if the adoption agency *had* assisted in the placement. *See id. T.S.B. by Dant* is thus not

contradictory to the many other states that have found a duty between adoption agency and adopted child.

Madison argues that this duty exists only when the adoption agency has custody over the child. Legal custody over the adopted child undeniably would establish a duty of care between child and adoption agency. Legal custody, however, is not the only relationship between an adoption agency and the adopted child that may create a duty. An adoption agency may not have legal custody of a child, but may still determine the placement or provide oversight of the child. Those relationships also confer a unique duty of care.

Madison also argues the lack of foreseeability of harm to Dexxon. Where policy considerations weigh in favor of establishing a duty, the type of harm must also be reasonably foreseeable. *Singleton v. L.P. Anderson Supply Co.*, 943 P.2d 968, 971 (Mont. 1997). "Harm may be reasonably foreseeable regardless of the foreseeability of the precise harm, injured party, or mechanism or sequence of injury that actually occurred." *Md. Cas. Co. v. Asbestos Claims Ct.*, 460 P.3d 882, 894 (Mont. 2020). The harm alleged to Dexxon was reasonably foreseeable. Few harms are as foreseeable as those resulting from negligent oversight of a child. Children, both by their nature and their legal status, are unable to advocate fully for themselves, protect themselves physically, or take agency into their own hands. It is reasonably foreseeable that an adoption agency's negligence would result in harm to

the adopted child. Plaintiff alleges that Madison failed to observe adequately Dexxon's wellbeing, thereby causing him mental and physical harm. Madison reasonably should have foreseen that negligence in its common law or statutory duties could cause injury to Dexxon.

Madison owed a common law and statutory duty to Dexxon. Plaintiff has alleged sufficient facts, taken as true, to establish a breach of statutory and common law duty. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009). The Court denies Madison's motion to dismiss for failure to state a claim.

## II.   Motion to Dismiss Under Rule 12(b)(2).

Madison also argues that the Court lacks personal jurisdiction. Doc. 17 at 12-21. The plaintiff bears the burden of establishing jurisdiction. *Nomad Glob. Commc'n Sols., Inc. v. Hoseline, Inc.*, 2021 WL 1400983, *4 (D. Mont. April 14, 2021). Where no applicable federal statute governs personal jurisdiction, "the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Montana applies "a two-step test to determine whether a Montana court may exercise personal jurisdiction over a nonresident defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*, 443 P.3d 407 (Mont. 2019); *see also Bird v. Hiller*, 892 P.2d 931 (Mont. 1995); *Cimmaron Corp. v. Smith*, 67 P.3d 258 (Mont. 2003). First, the Court must determine "whether personal jurisdiction exists under

Montana's long-arm statute." *Ford Motor Co.*, 443 P.3d at 412.

The long-arm statute provides as follows:

> [A]ny person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
>
>> (A) the transaction of any business within Montana;
>>
>> (B) the commission of any act resulting in accrual within Montana of a tort action[. . .]

M. R. Civ. P. 4(b)(1). If the first step is satisfied, the Court must determine whether exercising personal jurisdiction would be constitutional. *Bird*, 892 P.2d at 470; *Ford Motor Co.*, 443 P.3d at 412.

To determine whether Montana's long-arm statute confers jurisdiction, the Court must determine whether Madison commissioned any act resulting in the "accrual" of a tort in Montana. *See* M. R. Civ. P. 4(b)(1)(B). Madison correctly contends that the tort accrues where the alleged tortfeasor provided negligent services. *See Ascencio v. Phillips Agency, Inc*, 2016 WL 9461796, at *4 (D. Mont. Aug. 16, 2016) ("the Montana Supreme Court has made clear that courts must look beyond the place where the damages arose—the 'focus must be on the place where the services are rendered.'"). Madison provided all reporting services for Dexxon from its office in Illinois. Madison states that it is not licensed to do business in Montana and none of its agents set foot in the state. Madison correctly notes that electronic communications between an out-of-state service provider and a party in

Montana are not alone sufficient to establish personal jurisdiction under Montana's long-arm statute. *Threlkeld v. Colorado*, 16 P.3d 359, 365 (Mont. 2000).

Madison fails to recognize, however, that the alleged harm-causing act is the omission of Madison's duty to reasonably oversee the wellbeing of Dexxon. Madison necessarily "rendered" that omission from the location of the adopted child. The requirement that Madison reasonably evaluate Dexxon's health represents the service at-issue in this case rather than the composing of the reports. Madison wrote the reports in Illinois. The alleged omission to observe Dexxon occurred in Montana. The tort at issue thus "accrued" in Montana, as Dexxon lived Montana for the period of time that Madison allegedly failed to reasonably oversee, evaluate, and accurately report on his health. The fact that Madison's agents allegedly never set foot in Montana fails to defeat this Court's exercise of personal jurisdiction when a primary reason Madison allegedly breached its duty to Dexxon *is* its alleged failure to set foot in Montana.

The case law that Madison cites clarifies this distinction. In *Ascencio v. Phillips Agency, Inc.*, Georgia-based Phillips Agency performed a background investigation on Plaintiff Nissa Ascencio after she applied for a job in Montana. No. CV 16-64-M-DLC, 2016 WL 9461796. Phillips Agency's report included information regarding Ascencio's two long-past misdemeanor convictions. *Id.* at *1. Ascencio alleged emotional distress because the report put her job in jeopardy. *Id.*

13

The Court determined in *Ascencio* that "[a] wrongful communication made over interstate lines does not confer jurisdiction unless the underlying wrongful conduct also occurred in Montana." *Id.* at *4. Madison claims that "[n]o wrongful conduct, on the part of MAA, could have occurred in Montana, as [Madison] never performed any services in Montana nor did it contract to do so." Doc. 17 at 17. Madison's error is that, unlike in *Ascencio*, the alleged wrongful conduct did occur in Montana. The tort claim at issue is not limited to negligent misrepresentation. Plaintiff alleges negligence in failure to reasonably oversee Dexxon's health. This alleged omission of a statutory and common law duty necessarily occurred in Montana, where Dexxon was located.

In *Bird v. Hiller*, several Montana residents retained an Idaho attorney to represent them in their claims arising out of an automobile accident in Idaho. 892 P.2d 931 (Mont. 1995). The Idaho attorney refused to return settlement checks to the plaintiffs unless they agreed to allow him to deduct his fees and expenses. *Id.* at 932. The Montana Supreme Court dismissed the complaint for lack of personal jurisdiction over the Idaho attorney. *Id.* at 934. The attorney came into possession of the checks in Idaho. *Id.*

*Bi-Lo Foods, Inc. v. Alpine Bank, Clifton* provides a similar analysis. 955 P.2d 154 (Mont. 1998), Montana-based Bi–Lo Foods sent a check to Alpine Bank in Colorado. Alpine deposited the check into the account of one of its customers in

14

Colorado, rather than an agreed upon escrow account. *Id.* at 155-56. The Montana Supreme Court determined that Alpine's negligent mishandling of the check and breach of warranty occurred in Colorado. *Id.* at 158-59. In each of these cases, as well as *Bar T Timber, Inc. v. Pac. Fibre Prods.*, No. CV-13-30-BLG-CSO, 2013 WL 5209962 (D. Mont. Sept. 13, 2013) and *Cimmaron Corp. v. Smith*, 67 P.3d 258 (Mont. 2003), the action that caused the tort plainly occurred outside the state of Montana.

In *Bird* and *Bi-Lo Foods*, the funds at-issue were located outside of the state and the negligent mishandling occurred in that foreign jurisdiction. The allegedly negligent service occurred outside Montana. The harm felt by the Plaintiffs constituted the only occurrence within Montana. Thus, for purposes of the long-arm statute, the tort accrued outside of the state. Unlike those cases, the service at issue had to occur within Montana. The alleged omission of Madison's duty to provide reasonable oversight had to occur in Montana—from nowhere but Montana could Madison observe Dexxon's wellbeing in accordance with CCCWA regulations.

In *Threlkeld v. Colorado*, the plaintiffs' horse died while under the care of Colorado State University in Colorado. 16 P.3d at 360-66. The plaintiffs, residents of Montana, sued several Colorado entities for veterinary malpractice, deceit, and negligent misrepresentation or fraud. The deceit, fraud, and misrepresentation claims allegedly arose from telephone conversations between the parties. The Montana

Supreme Court determined that it lacked jurisdiction where the allegedly wrongful conversations served as part of an ongoing relationship between the parties. The plaintiffs had initiated that relationship. *Id.* at 364–65. The Montana Supreme Court also considered that the alleged misrepresentations were connected to the treatment and death of the horse. The treatment and death of the horse both occurred in Colorado. No long-arm jurisdiction existed where the defendants' in-state conduct was auxiliary to its out-of-state conduct. *Id.* at 365.

Unlike *Threlkeld*, Madison's alleged out-of-state conduct proves auxiliary to its in-state conduct. The location of Dexxon controls, rather than where Madison wrote the reports. CCCWA's requirement for firsthand reporting that Madison accepted as the adoption agency to Dexxon represents the duty at issue in this case. *See* Doc 19-5 at 15. The alleged omission of that duty establishes a potential breach. Any omission of a duty that had to be accomplished in Montana means that the tort accrued in Montana. These factors satisfy Montana's long-arm statute.

The Court next must evaluate whether asserting personal jurisdiction over Madison would comport with notions of due process. The Fourteenth Amendment's Due Process Clause limits a court's power to exercise jurisdiction over a defendant. A tribunal's authority depends on a defendant's "contacts" with the forum state such that maintenance of a suit would prove "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and

substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–317 (1945). The Court may exercise jurisdiction only when a company "'purposefully avails itself of the privilege of conducting activities within the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*, 141 S. Ct. 1017, 1024 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In other words, the company must "exercise[] the privilege of conducting activities" within the forum. *Int'l Shoe Co*, 326 U.S. at 319.

The Court follows the Ninth Circuit's three-part test to determine whether the requirements of due process have been met:

(1) The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Doe v. Unocal Corp*., 248 F.3d 915, 922 (9th Cir. 2001). A court presumes reasonableness where a defendant purposefully availed himself of the privilege of doing business in the forum state. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

Asserting jurisdiction over Madison comports with constitutional due process requirements. Madison availed itself to the jurisdiction of Montana by accepting the

17

responsibility of supervising Dexxon's wellbeing after Dexxon was transferred to the Ranch for Kids in Montana. Madison possessed a duty of care to Dexxon and took on additional post-adoption reports after Dexxon was placed at Ranch for Kids.

Madison compares itself to the insurance company in *Rush v. Savchuk*, 444 U.S. 320 (1980). The U.S. Supreme Court determined that the insurance company in *Rush* had no control over the location of its covered driver, and thus no contacts to the state where the driver caused an automobile accident. *Id.* at 332-33. Unlike the insurance company in *Rush*, however, Madison stated plainly in reports to the Chinese government that it *assisted* in making the decision to place Dexxon at Ranch for Kids. Doc 19-1 at 3 (emphasis added). Even had Madison not "worked diligently" to assist in the placement of Dexxon, as it claimed, Madison availed itself to Montana by continuing its statutory and contractual obligation to Dexxon in Montana. The Chinese adoption regulations required Madison to enter Montana and provide firsthand reporting of Dexxon's condition. Doc 19-5 at 15. Madison cannot complain of unfair surprise where its statutory duties required it to enter Montana. Unlike the insurance company in *Rush*, the firsthand evaluations contemplated by CCCWA regulations required Madison to visit Dexxon in Montana. The description of post-adoption reporting on Madison's own website, states that the "child [will] be observed by a knowledgeable social worker who will provide feedback about your child's transition." Doc. 19 at 19. Madison cannot observe what it cannot "see[] and

hear[]," Doc. 19-5 at 15, and the necessary observations required Madison to enter Montana.

Madison cites *Kulko v. Superior Ct. of Cal. In & For City & Cnty. of San Francisco*, 436 U.S. 84, 94 (1978), to argue that Madison's acquiescence in the decision to send Dexxon to the Ranch for Kids should not be sufficient to establish purposeful availment. In *Kulko*, the U.S. Supreme Court determined that the acquiescence of divorced father, who was a New York resident, in his daughter's desire to live with her mother in California did not confer jurisdiction over the divorced father in California courts. *Id.* at 101. Madison's role differs from the father in *Kulko*. Unlike a father who, "in the interests of family harmony and his children's preferences, [] allow[ed] them to spend more time in California," *id.* at 94, Madison possessed both statutory and common law duties to make firsthand observations of Dexxon in Montana. Plaintiff's claim arises out of the Madison's forum-related activities. Madison operated under the color of law and contract as it oversaw the health of Dexxon in Montana. Unlike *Kulko*, Madison has a business purpose in Montana. Madison continued to facilitate the adoption after Dexxon was moved to Montana.

For the reasons discussed above, this Court properly maintains personal jurisdiction over Madison in this case.

## ORDER

Accordingly, **IT IS ORDERED** that:

•   Madison's Motion to Dismiss (Docs. 4, 16.) is **DENIED**.

DATED this 1st day of October, 2021.

_____

Brian Morris, Chief District Judge
United States District Court