**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| KRISTIN MAYER, as conservator for Dexxon Butler, | CV-21-38-GF-BMM |
| Plaintiff, | |
| v. | ORDER |
| MADISON ADOPTION ASSOCIATES, LTD., | |
| Defendant. | |

## INTRODUCTION

Plaintiff Kristin Mayer ("Mayer"), conservator for Dexxon Butler ("Dexxon"), filed claims against Defendant Madison Adoption Associates ("MAA"), for abuses Dexxon allegedly suffered at Ranch for Kids Montana residential education program. (Doc. 1); (Doc. 13.) The Court previously denied MAA's Motion to Dismiss Mayer's Amended Complaint. (Doc. 24.)

MAA filed a Third-Party Complaint against former board members of the Montana Board of Private Alternative Adolescent Residential or Outdoor Programs

1

("PAARP"). (Doc. 69.) MAA seeks damages from the members of the PAARP Board for the Board's decisions regarding investigations and whether to revoke or suspend Ranch for Kids' license. (Doc. 69 at ¶ 46.)

These Third-Party Defendants ("Board Members") have filed a Motion to Dismiss the Third-Party Complaint. (Doc. 76.) Board Members first contend that the federal Volunteer Protection Act provides them absolute immunity for liability arising from the work on the PAARP Board. Board Members also argue that the Eleventh Amendment and Montana state law shield them from MAA's claims. (Doc. 77 at 4.)

## BACKGROUND

### *Dexxon's placement*

Dexxon was born in China in 2002. (Doc. 13.) The Chinese government assumed care for Dexxon after he was found abandoned as an infant. (*Id.* at ¶ 6.) Dr. Patrick and Tari Butler ("Butlers") of Illinois adopted Dexxon in 2015. (*Id.* at ¶ 7.) Butlers contracted with MAA to serve as their adoption agency. (*Id.* at ¶ 8.) The agreement between MAA and Butlers required MAA to complete the first three post-adoption reports for Dexxon. (*Id.* at ¶ 25.) The United States requires that adoptive parents comply with all post-adoption reporting requirements of foreign nations. (*Id.*); 22 C.F.R. § 96.51(c). Chinese law requires the adoption agency to submit adoption reports to the Chinese government. (Doc. 13 at ¶ 25.) China requires reports

at six months, one year, two years, three years, four years, and five years post-adoption. MAA conducted the adoption reports up until at least year four. (Doc. 19 at 13-14.)

Butlers sent Dexxon to a youth group home in Idaho three months after Dexxon arrived in Indiana. (Doc. 13 at ¶ 9.) The group home notified Butlers after several incidents that it could not continue to provide care for Dexxon. (*Id.* at ¶ 10.) MAA assisted the Butlers in selecting a new residential facility for Dexxon. (*Id.* at ¶ 11.) Butlers chose the "Ranch for Kids" in Lincoln County, Montana. (*Id.*)

MAA reported to the Chinese government that it had "worked diligently to determine the best placement for Dexxon" and that Ranch for Kids "has a highly trained staff" that is "committed to providing a safe environment for Dexxon." (Doc. 19 at 12-14.) Mayer alleges that, in reality, Ranch for Kids physically and emotionally tortured its residents. (Doc. 13 at ¶¶ 14-23.) Ranch for Kids staff allegedly strangled Dexxon to unconsciousness, psychologically abused him, withheld food and medical treatment, and provided poor education. (*Id.*)

MAA remained in consistent electronic contact with Ranch for Kids staff during the four years that Dexxon spent at the facility. (*Id.* at ¶ 24.) MAA claimed to receive weekly reports regarding Dexxon's health from Ranch for Kids and reported social improvement and good health to the Chinese government. (*Id.* at ¶

25.) Mayer alleges, however, that MAA never truly investigated Dexxon's health, including never actually visiting the Ranch for Kids facility in Montana. (*Id.*)

The Montana Department of Health and Human Services removed Dexxon and twenty-six other children from Ranch for Kids in July of 2019. (*Id.* at ¶¶ 27-28.) Butlers refused to allow Dexxon to return to their home. (*Id.*) Dexxon became a ward of Montana and currently lives in a group home in Great Falls, Montana. (*Id.*)

### *The PAARB Board*

The PAARP Board licensed and regulated private alternative adolescent residential or outdoor programs, including Ranch for Kids, as a public service. Mont. Code Ann. § 37-48-101 (2017). Montana law granted the PAARP Board the authority to oversee and adopt rules regarding licensure of private alternative adolescent residential or outdoor programs, including license suspension and revocation. Mont. Code Ann. §§ 37-48-103, -106 (2017). The PAARP Board consisted of five volunteer members, three from programs governed by the Board and two from the public. Mont. Code Ann. § 2-15-1745 (2017). The Montana State Legislature eliminated the PAARP Board in 2019.

## DISCUSSION

Board Members have moved to dismiss MAA's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 76.) A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a

complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). The complaint must set forth sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

A claim plausible on its face requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations that only permit the court to infer "the mere possibility of misconduct" prove insufficient. *Id.* at 679. A court appropriately dismisses a complaint under Rule 12(b)(6) if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court must accept all allegations of material fact contained in the complaint as true when evaluating a Rule 12(b)(6) motion. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

Board Members argue that all actionable conduct took place within the scope of Board Members' responsibilities on the PAARP Board. (Doc. 77 at 9.) Board Members point out that the Third-Party Complaint alleges that they acted negligently in "licensing [Ranch for Kids], allowing it to operate and failing to promptly investigate and intervene with knowledge of reports of abuse, neglect, and unprofessional conduct thereby allowing [Ranch for Kids] to continue to operate." (Doc. 69 at ¶ 46.) Board Members contend that Montana state law immunizes them

5

for this conduct undertaken within the scope of the PAARP Board's discretionary functions. (Doc. 77 at 12-15.) The Court agrees.

Every action described in MAA's Third-Party Complaint represents the conduct of the PAARP Board as a single entity. (Doc. 69.) The Third-Party Complaint contains not a single allegation of negligent acts taken by any individual Board Member outside the scope of the PAARP Board's work. (*Id.*) The Court, accepting as true the allegations in MAA's Third-Party Complaint, determines that no material facts suggest Board Members acted outside their collective role as the PAARP Board or outside their collective Board functions of licensing and investigating programs pursuant to Montana law in effect at the time.

Montana law recognizes quasi-judicial immunity as an appropriate protection for agency officials performing certain functions. *See Koppen v. Board of Medical Examiners*, 759 P.2d 173 (Mont. 1988). The Montana Supreme Court has explained that "agency officials performing . . . functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Id.* at 176. Officials such as Board Members remain "immune from tort liability when they commit torts while performing [these] quasi-judicial functions." *Eklund v. Trost*, 151 P.3d 870, 876 (Mont. 2006).

A "quasi-judicial function" represents "an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making

determinations or controversies." *Id.* (quoting Mont. Code Ann. § 2–15–102(9) (1999)). This definition, applied to Board Members conduct at issue here, would include their role in "issuing, suspending, or revoking licenses, permits, and certificates," "granting or denying privileges, rights, or benefits," and "evaluating and passing on facts." Mont. Code Ann. § 2-15-102(10)(c), (a), (e). Board Members' administrative or ministerial functions, in contrast, would involve no exercise of discretion. *Id.*

MAA has alleged that Board Members acted negligently in fulfilling their statutory functions to license and investigate Ranch for Kids. (Doc. 85 at 22-23.) MAA correctly notes that Montana law governs Board Members' performance of these functions: "[t]he board *may* issue a license that is valid for a period of between 1 year and 3 years or *may* issue a provisional license," "[t]he board *may* suspend or revoke a license if the board . . . determines that the program is not operated in a manner consistent with the rules," and "[t]he . . . board *may* enter and inspect, without prior notice, program premises and facilities in response to a complaint." (*Id.* at 23); Mont. Code Ann § 37-48-106, -115 (2017) (emphasis added). It does not follow that the statutory assignment of this authority transforms the PAARP Board's relevant functions into ministerial ones.

A statute's use of the word "may" when delegating power to an agency demonstrates the legislature's intent to grant the "discretionary authority to act or

7

decline to act." *See Sikorski v. Johnson*, 143 P.3d 161, 167 (Mont. 2006). The plain language of the statutes governing the PAARP Board indicates that Board Members, in licensing and investigating Ranch for Kids, performed discretionary functions. *Id.*; Mont. Code Ann § 37-48-106, -115 (2017). Quasi-judicial immunity shields Board Members from MAA's Complaint for this reason. *See Eklund v. Trost*, 151 P.3d 870, 876 (Mont. 2006); *Rahrer v. Bd. of Psychs.*, 993 P.2d 680 (Mont. 2000).

      MAA contends that Montana law required the PAARP Board "to 'monitor and maintain a high-level standard of care and to ensure the safety and wellbeing of the adolescents participating in the programs.'" (Doc. 85 at 23) (quoting Mont. Code Ann. § 37-48-101 (2017)). MAA quotes only a portion of the purpose section of the statute. The full text reads as follows:

> Purpose: The purpose of the board is to license and regulate private alternative adolescent residential or outdoor programs as a public service to monitor and maintain a high standard of care and to ensure the safety and well-being of the adolescents and parents using the programs. Necessary licensure processes and safety standards for programs are best developed and monitored by the professionals that are actively engaged in providing private alternative adolescent residential care.

Mont. Code Ann § 37-48-101 (2017). This statute indicates that the Montana Legislature established the PAARP Board to license programs. To license programs represents an action clearly included in the definition of "quasi-judicial function." *See* Mont. Code Ann. § 2-15-102(10)(c). The second sentence of this section also

8

reveals that the Montana Legislature intended alternative adolescent care professionals to rely on their own experience in the field when developing licensure standards and safety procedures. The process of evaluating the practices in a professional field, crafting a licensure process, and ultimately issuing or revoking licenses necessarily involves the exercise of professional judgment. Such judgment calls, whether negligently made here or not, represent discretionary functions of the PAARP Board that fall within the protections of quasi-judicial immunity. Mont. Code Ann. § 2-15-102(1); *Koppen v. Board of Medical Examiners*, 759 P.2d 173 (Mont. 1988).

## CONCLUSION

The Court agrees with Board Members that quasi-judicial immunity bars MAA's Third-Party Complaint. The Court will dismiss MAA's Third-Party Complaint for this reason. The Court will not reach Board Members' remaining immunity arguments.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Board Members' Motion to Dismiss (Doc. 76) is **GRANTED**.

2. Board Members' Motion to Stay (Doc. 81) is **DENIED** as moot.

3. Board Members' Motion to Vacate (Doc. 98) is **DENIED** as moot.

DATED this 25th day of January, 2023.

*[signature: Brian Morris]*

Brian Morris, Chief District Judge
United States District Court

10