IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| KRISTIN MAYER, as conservator for Dexxon Butler, <br><br> Plaintiff, <br><br> v. <br><br> MADISON ADOPTION ASSOCIATES, LTD., <br><br> Defendant. | **CV-21-38-GF-BMM** <br><br> **ORDER** |

**INTRODUCTION**

Plaintiff Kristin Mayer ("Mayer"), conservator for Dexxon Butler, ("Dexxon") has sued Defendant Madison Adoption Associates ("MAA"), asserting claims for abuses that Dexxon suffered at the Ranch for Kids Montana residential education program. (Doc. 1); (Doc. 13.) The Court previously denied MAA's Motion to Dismiss Mayer's Amended Complaint. (Doc. 24.) The Court also has dismissed MAA's Third-Party Complaint against former board members of the Montana Board of Private Alternative Adolescent Residential or Outdoor Programs ("PAARP"). Mayer now has filed a Motion for Partial Summary Judgment on the duty and breach elements of her negligence claim. (Doc. 87). The Court held a hearing on Mayer's motion on March 9, 2023. (Doc. 135.) The Court will address

1

by separate Order the other motions discussed at the hearing, including Mayer's Motion for a Jury View (Doc. 105) and both Motions in Limine filed by the parties. (Doc. 91); (Doc. 107.)

## BACKGROUND

The Court briefly will summarize the background provided in its previous Orders. (Doc. 24); (Doc. 115.) Dexxon was born in China in 2002. (Doc. 13.) The Chinese government assumed care for Dexxon after he was found abandoned as an infant. (*Id.* at ¶ 6.) Dr. Patrick and Tari Butler ("Butlers") of Illinois adopted Dexxon in 2015. (*Id.* at ¶ 7.) Butlers contracted with MAA to serve as their adoption agency. (*Id.* at ¶ 8.) The adoption agreement between MAA and Butlers required MAA to complete the first three post-adoption reports for Dexxon. (*Id.* at ¶ 25.)

Chinese law requires submission of adoption reports to the Chinese government as part of all international adoptions. (*Id.*) The United States requires that adoptive parents comply with all post-adoption reporting requirements of foreign nations. (*Id.*); 22 C.F.R. § 96.51(c). China, through the China Center for Children's Welfare and Adoption ("CCCWA"), requires reports at six months, one year, two years, three years, four years, and five years post-adoption. (Doc. 19-5 at 12-18.) MAA conducted the CCCWA adoption reports for Butlers up until at least year three. (Doc. 19 at 13-14.)

Butlers sent Dexxon to a youth group home in Idaho only three months after Dexxon arrived in Indiana. (Doc. 13 at ¶ 9.) The group home notified Butlers, after several incidents, that it would not be able to continue caring for Dexxon. (*Id.* at ¶ 10.) MAA assisted Butlers in selecting a new residential facility for Dexxon. (*Id.* at ¶ 11.) Butlers chose the "Ranch for Kids" in Lincoln County, Montana. (*Id.* at ¶¶ 11-12.)

MAA reported to the Chinese government that it had "worked diligently to determine the best placement for Dexxon." (Doc. 19 at 12-14.) MAA represented that Ranch for Kids "has a highly trained staff" which is "committed to providing a safe environment for Dexxon." (*Id.*) MAA remained in consistent electronic contact with the Ranch for Kids staff during the four years Dexxon spent at the facility. (Doc. 13 at ¶ 24.) MAA claimed to receive weekly reports regarding Dexxon's health from Ranch for Kids and reported social improvement and good health to the Chinese government. (*Id.* at ¶ 25.)

In reality, Ranch for Kids subjected the children in its care to abuse and neglect. (*Id.* at ¶¶ 14-23.) The Montana Department of Health and Human Services removed Dexxon and twenty-six other children from Ranch for Kids in July of 2019. (*Id.* at ¶¶ 27-28.) Butlers refused to allow Dexxon to return to their home. (*Id.* at ¶¶ 27-28.) Dexxon currently lives in a group home in Great Falls. (*Id.* at ¶¶ 27-28.)

## DISCUSSION

Mayer seeks summary judgment on the duty and breach elements of her negligence claim. (Doc. 87.) The Court will grant summary judgment only when the moving party demonstrates both an absence of material fact issues and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The summary judgment inquiry requires examining the evidence in the light most favorable to the nonmovant. Once the movant has met this initial burden, however, the party opposing the motion "may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

*The duty element of Mayer's negligence claim*

Mayer contends that the Court already has determined that MAA owed both a statutory and common law duty to Dexxon. (Doc. 88 at 6.) MAA, in contrast, asks the Court to reconsider its conclusion that MAA owed either a statutory or common law duty of care to Dexxon. (Doc. 96 at 7-26.)

A plaintiff must prove the following elements in order to prevail on a negligence claim: 1) the existence of a legal duty owed by the defendant to the

4

plaintiff; 2) breach of that duty; 3) harm caused by the breach; and 4) resulting damages. *Krieg v. Massey*, 781 P.2d 277, 278-79 (Mont. 1989). The predicate legal duty for a negligence claim may arise from statutory or common law. *See* Mont. Code Ann. §§ 1-1-105, -107, -108, -109; *Fisher v. Swift Transp. Co.*, 181 P.3d 601 (Mont. 2008). The existence of a legal duty represents a question the Court must answer in any case involving a claim of negligence.

The Court previously has evaluated this issue and found the existence of statutory duty on the part of MAA: "regulations establish an obligation for adoption agencies to visit, observe, and report truthfully on the 'life and growth' of the adopted child. Adoption agencies that conduct business with China must provide post-adoption reports in accordance with CCCWA regulations. Those obligations create a statutory duty." (Doc. 24 at 5.) The Court also determined that MAA owed a common law duty to Dexxon: "[a]n adoption agency may not have legal custody of a child [] but may still determine the placement or provide oversight of the child. Those relationships also confer a unique duty of care." (*Id.* at 10.) The Court also explained that "[MAA] reasonably should have foreseen that negligence in its common law or statutory duties could cause injury to Dexxon." (*Id.* at 11.)

MAA, in opposing Mayer's Motion, restates many of the same arguments it has offered before regarding the duty element of Mayer's negligence claim. (Doc. 96.) MAA asks the Court to reevaluate federal regulations governing international

adoption reporting obligations as well as the Court's understanding of Montana negligence at common law. The Court declines to revisit its prior analysis. The Court's Order denying MAA's Motion to Dismiss delineated the basis for MAA's statutory and common law duties. (Doc. 24 at 3-6.) The Court reiterates its determination that MAA owed Dexxon both a statutory duty to comply with the established post-adoption reporting requirements and regulations as well as a common law duty to exercise reasonable care in its post-adoption relationship with Dexxon. (*See id.*)

*The breach element of Mayer's negligence claim*

A grant of summary judgment on the breach element of Mayer's negligence claim, in contrast, would have the Court invade the province of the appropriate factfinder: the jury. The Court will deny summary judgment for this reason. Mayer bases her argument on the Court's prior explanation that "[t]o the extent that [MAA] failed to 'actual[ly] visit' Dexxon, provide 'real' reports, or record faithfully what [MAA] social workers "see and hear,' [MAA] breached that statutory duty." (Doc. 88 at 7-8.) Mayer does not seek summary judgment on MAA's alleged breach of a common law duty owed to Dexxon. (*Id.* at 7-8.) Mayer instead contends only that the evidence now shows MAA failed to arrange for "actual visits" or real reports, in violation of the federal regulations requiring it to follow China's post-adoption

6

reporting requirements. (*Id.* at 8.) Mayer appears to ignore that she has raised a claim of common law negligence rather than negligence per se.

Only negligence per se claims allow a plaintiff to prove a defendant's negligence simply by showing that a defendant's violation of a statute or regulation caused the plaintiff's injury; a plaintiff need not show that a defendant's conduct fell below the relevant standard of care. *Schwabe v. Custer's Inn Associates,* 15 P.3d 903, 909 (Mont. 2000). Negligence per se requires establishing elements different from those of a common law negligence claim, however: 1) the defendant violated the particular statute; 2) the statute was enacted to protect a specific class of persons; 3) the plaintiff is a member of that class; 4) the plaintiff's injury is of the sort the statute was enacted to prevent; and 5) the statute was intended to regulate members of defendant's class. *Schwabe v. Custer's Inn Associates,* 15 P.3d 903, 909 (Mont. 2000). Mayer's First Amended Complaint alleges that MAA owed a duty to Dexxon, it breached that duty, its breach injured Dexxon, and Dexxon has sustained damages. (Doc. 13.) These represent the elements of a negligence, rather than a negligence per se, claim.

A statute or regulation in a common law negligence claim only "provides evidence of the existence of a duty and that violation of that statute is evidence of a breach of that duty." *Prindel v. Ravalli Cnty.*, 133 P.3d 165, 175 (Mont. 2006). It remains for the jury to evaluate the requirements of the post-adoption regulations

applicable to MAA, assess MAA's conduct in light of those regulations, and evaluate whether any alleged violation of the regulations, combined with the jury's evaluation of whether MAA's conduct falls below the common law standard of care, constitutes sufficient evidence to prove a breach of MAA's duty.

The record and the parties' briefing also reveal several disputes that render summary judgment inappropriate. The Montana Supreme Court has explained that "summary judgment is inappropriate in negligence cases when the contested facts actually involve the issue of a negligent breach of a legal duty." *Morales v. Tuomi*, 693 P.2d 532 (Mont. 1985) (citing *Dean v. First National Bank of Great Falls*, 452 P.2d 402, 407 (Mont. 1969)). The parties appear to disagree, as an initial matter, as to what would constitute an "actual visit" or the "real reports" required by the CCCWA. Mayer argues that MAA should have conducted in-person visits to Dexxon at Ranch for Kids, implying that only an in-person, face to face visit could constitute an "actual visit." (Doc. 88 at 3-5.) MAA, in contrast, contends that genuine factual disputes exist regarding whether MAA complied with the applicable regulations, implying that the CCCWA may not require such visits. (Doc. 96 at 26-27.)

Mayer has alleged that post-adoption regulations required MAA to provide adoption reports that were "real, specific and comprehensive. The social worker should prepare the report based on the actual visits, recording faithfully what he or

she sees and hears in the family and reflecting objectively the changes of the adoptive family after the adoption and the life and growth of the adopted child." (Doc 19-5 at 15.) MAA claims that it substantially complied with this regulation, in particular, and acted as a reasonably prudent adoption agency, in general, during the course of its relationship with Dexxon: "evidence indicates that MAA did in fact perform in-person visits [to the Butler home] and provide real reports with first-hand observations," and "MAA—an agency that is accredited by the Intercountry Adoption and Accreditation Maintenance Entity—acted . . . in compliance with the standard of care applicable to accredited adoption agencies." (Doc. 96 at 27.) Mayer may view these assertions with skepticism, but they prove sufficient for MAA to survive summary judgment on the breach element of Mayer's negligence claim.

## CONCLUSION

The Court views all the facts and the inferences drawn therefrom in the light most favorable to MAA at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The most favorable view of MAA's assertions would reveal genuine factual disputes regarding what actions MAA took, and what the CCWA and related regulations actually required, following Dexxon's placement at Ranch for Kids. Resolution of these factual question requires the jury's review rather than the Court's review. The Court DENIES Mayer's Motion for Partial Summary Judgment.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

- Mayer's Motion for Partial Summary Judgment (Doc. 87) is **DENIED.**

DATED this 23rd day of March, 2023.

*[signature: Brian Morris]*

Brian Morris, Chief District Judge
United States District Court